CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 10 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SHEILA E. MEADOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:05cv00547 |
| v. ) | |
| ) | |
| JO ANNE B. BARNHART, ) | By: Michael F. Urbanski |
| Commissioner of Social Security, ) | United States Magistrate Judge |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Sheila E. Meador ("Meador") brought this action for review of the decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383. The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is before the court on cross motions for summary judgment. Having reviewed the record, and after briefing and oral argument, the case is now ripe for decision. As the ALJ's decision is amply supported by evidence in the record, it must be affirmed.

I

Plaintiff was born on October 7, 1965, and completed the seventh grade. (Administrative Record, hereinafter "R." at 21, 55, 77, 249-50, 256) Plaintiff previously worked in a sewing factory and as a glass setter in a window and door factory. (R. 21, 72, 250-51) Plaintiff filed applications for DIB and SSI with a protective filing date of May 8, 2003, alleging she became disabled on December 24, 2001 due to a back disorder. (R. 20, 21, 71) Plaintiff's claims were

denied at both the initial and reconsideration levels of administrative review, (R. 20), and an administrative hearing was held before an administrative law judge ("ALJ") on August 17, 2004. (R. 246-59) On October 6, 2004, the ALJ issued a decision finding plaintiff disabled under the Act as of April 22, 2004. (R. 25-26) However, the ALJ denied plaintiff's claims for DIB and SSI from December 24, 2001 to April 21, 2004, finding plaintiff retained the residual functional capacity ("RFC") to perform a full range of medium work during that period.[1] (R. 25-26)

The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on August 5, 2005, when the Appeals Council denied plaintiff's request for review. (R. 7-9) Plaintiff then filed this action challenging the Commissioner's decision denying her benefits from December 24, 2001 to April 21, 2004.

## II

Plaintiff first argues that the ALJ erred by failing to find Meador suffered from severe mental impairments prior to April 22, 2004. In doing so, plaintiff alleges the ALJ failed to properly consider the combined effect of all plaintiff's impairments on her ability to work between December 24, 2001 and April 21, 2004. Finally, plaintiff claims the ALJ erred in his evaluation of plaintiff's back condition and related pain prior to April 22, 2004, and that the record demonstrates plaintiff suffered from impairments capable of producing disabling pain during the relevant period.

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for

---

[1] Thus, the only issue presented in this case is whether the ALJ's decision that plaintiff was not acting under a disability from December 24, 2001 to April 21, 2004 is supported by substantial evidence.

2

entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

### III

Plaintiff first argues that the ALJ erred by failing to find that Meador suffered from severe mental impairments, rendering her disabled from December 24, 2001 to April 22, 2004. The ALJ determined that plaintiff did not have severe mental impairments as defined by the regulations, based on the minimal evidence of record and the state agency physicians' opinion that plaintiff had no more than mild limitations in concentration, social functioning, and activities of daily living. (R. 23)

The Social Security Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual is determined to be under a disability:

> [O]nly if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

3

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

At the second step of the five step sequential analysis used by the Commissioner to determine disability, the ALJ considers whether the individual has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The severity regulations provide that in order to be found disabled, an individual must have an impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities include the ability and aptitude necessary to do most jobs. 20 C.F.R. §§ 404.1521, 416.921. If an individual does not have a severe impairment or combination of impairments, she is not considered disabled under the Act.

The claimant has the burden of proving to the Commissioner that she is disabled by showing she has a medically determinable physical or mental impairment that renders her unable to engage in substantial gainful employment. Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986); see 20 C.F.R. §§ 404.1512(c), 416.912(c). The Fourth Circuit has held that an impairment can be considered "not severe" only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

Though the burden of establishing a severe impairment is relatively low, plaintiff in this case has failed to meet that burden in terms of her mental impairment prior to April 22, 2004. The record contains scant evidence of mental impairment, and does not establish that her mental condition significantly limited her ability to engage in basic work activities, as required by the regulations. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

4

The first mention of mental impairment in the record is on July 6, 1999 when in his notes, Dr. Bumgardner, plaintiff's primary care physician, assessed plaintiff with depression, yet gave no clinical findings for such assessment. (R. 190) Dr. Bumgardner prescribed Serzone. (R. 190) On October 30, 1999, Dr. Bumgardner assessed plaintiff with depression again, only noting she needed her depression medication refilled. (R. 189) On January 7, 2000, plaintiff reported needing something "for her nerves." (R. 188) She was prescribed Valium. (R. 188) Over one year later, Dr. Bumgardner reported plaintiff was doing fairly well but had some stress and needed something for it. (R. 187) He assessed her with anxiety and continued her on Valium and Serzone. (R. 187) On July 6, 2001, plaintiff reported to Dr. Pasley, her gynecologist, that she was suffering from emotional outbursts and episodes of rage. (R. 154) She was referred to Dr. Bumgardner for further evaluation and therapy. (R. 154) In his records, Dr. Pasley twice noted plaintiff showed no signs of anxiety or depression. (R. 153, 157)

Though plaintiff was referred to her primary care physician after complaining of rage in July 2001, Dr. Bumgardner's notes make no mention of any mental issues until late 2002. On November 15, 2002, plaintiff complained to Dr. Bumgardner of increased anxiety, mostly at night, and the doctor diagnosed her with anxiety state NOS.[2] (R. 170) Dr. Bumgardner assessed plaintiff as having the same problem of anxiety state NOS on February 24, 2003, March 18, 2003, April 29, 2003, and June 7, 2003, without making any other notations as to her mental state. (R. 161-62, 163-64, 165-66, 167-68) Dr. Bumgardner never recorded any clinical findings of plaintiff's mental status, nor opined as to her mental limitations.

---

[2] Anxiety State NOS (not otherwise specified) means the plaintiff does not meet the criteria for any specific anxiety disorders.
http://www.psyweb.com/Mdisord/AnxietyDis/anxietynos.jsp.

Plaintiff self-reported to Piedmont Community Services on February 12, 2004 and was scheduled for weekly sessions. (R. 237) At a session on February 20, 2004, she appeared tearful, (R. 236), and on February 27, 2004, plaintiff stated she was feeling better. (R. 235) Treatment notes from counselor Sue Williams, M.S., indicate plaintiff continued to show improvement with each therapy session. (R. 231, 232, 234, 235) On March 9, 2004, Williams filled out a request for physician evaluation, for plaintiff to receive a psychological evaluation and any medication as indicated by the psychiatrist. (R. 233) Williams listed plaintiff's problems as major depression and anxiety. (R. 233) There is no indication from the record that plaintiff ever saw a psychiatrist. Notes from her last two sessions reveal plaintiff continued to make excellent progress at her counseling sessions, as assessed by Williams. (R. 231, 232) Plaintiff did not show up for appointments scheduled April 16, 2004 and June 2, 2004. (R. 230) Plaintiff did not visit Piedmont again.

Plaintiff has not met her burden of proving her mental impairment has any effect on her ability to perform basic work activities. While records indicate diagnoses of depression and anxiety state NOS, no clinical findings of any mental impairments were noted. No limitations were ever addressed. Plaintiff was treated with medication, though never hospitalized or referred for psychiatric treatment. Plaintiff saw a counselor at Piedmont Community Services six times, who noted she improved in her ability to deal with her feelings with every session, but Meador never saw a psychiatrist regarding her mental health issues.

After a record review, the state agency physicians found that plaintiff had no more than mild impairments in the first three areas of daily activities, social functioning, and concentration. (R. 213) As for the fourth area, she had no episodes of decompensation. (R. 213) Regulations

provide that if plaintiff's degree of limitation is rated "mild" in the first three areas and "none" in the fourth area regarding decompensation, plaintiff's impairment will generally be considered "not severe" unless evidence otherwise indicates there is more than minimal limitations in plaintiff's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Plaintiff has simply offered no evidence to show that her mental impairments were anything but slight abnormalities having no effect on her ability to perform basic job functions.

Furthermore, plaintiff never raised the issue of mental impairment in her application for Social Security benefits. (R. 71) She stated the condition limiting her ability to work was a deteriorating fifth vertebra that makes her hands and legs go numb. (R. 71) She reported being unable to sit for long periods of time, and being unable to lift. (R. 71) Meador failed to raise the issue of mental impairment again at her administrative hearing, where plaintiff's counsel stated "Ms. Meador alleges disability based on a combination of impairments: she suffers from severe arthritis, both hips, she also has a back impairment, had surgery back in April of 2002 as documented in Exhibit 10F." (R. 248) The limitations outlined in plaintiff's Daily Activities Questionnaire revolve around her physical impairments. (R. 88- 94) Specifically, plaintiff stated she is no longer able to cook, clean, camp, or play ball because of her back condition. (R. 89, 90, 91, 92)

Additionally, plaintiff's daily activities are inconsistent with her claim that her mental impairment limited her ability to perform basic work activities from December 24, 2001 to April 21, 2004. She stated she left the home up to three times per week to visit the store, doctor's office, or a friend. (R. 88) She tried to cook, clean, vacuum, and grocery shop; she read thirty minutes to one hour once or twice a week, and watched television or listened to the radio eight to

7

nine hours per day. (R. 89, 90) Meador reported sometimes forgetting what she watched. (R. 91) She visited her sister-in-law once per week, talked with friends and relatives over the phone, and got along with family, friends, and neighbors. (R. 91) She indicated she was unable to work because she could not stand or walk, as her back felt like it would break and her legs were numb. (R. 93) On this record, substantial evidence supports the ALJ's finding that plaintiff did not suffer from a severe mental impairment.

Plaintiff further argues that the ALJ failed to properly consider the combined effects of her impairments on her ability to work by failing to adequately consider the effects of plaintiff's mental impairments. As the undersigned finds substantial evidence supports the ALJ's conclusion that plaintiff's mental impairments are not severe, the ALJ did not err in his consideration of the effect of plaintiff's mental impairments in combination with her physical impairments. The ALJ specifically noted he considered "all evidence of record" in determining plaintiff had the residual functional capacity to frequently lift and carry twenty-five pounds, and sit/stand/walk as required throughout an eight hour workday. (R. 24) He found that plaintiff was able to perform the full range of work at the medium level of exertion during the relevant period, as she had "no nonexertional limitations." (R. 24) As such, plaintiff's argument that the ALJ failed to properly consider the combined effects of her impairments lacks merit.

IV

Plaintiff also claims the ALJ erred in his evaluation of plaintiff's back condition and related pain prior to April 22, 2004, resulting in the erroneous determination that plaintiff could perform a full range of medium work during that period. However, substantial evidence of

8

record supports the ALJ's finding as to plaintiff's RFC between December 24, 2001 and April 21, 2004.

On January 28, 2002, plaintiff complained to Dr. Bumgardner of back and hip pain which began after moving a dresser. (R. 181) On February 2, 2002, plaintiff returned to Dr. Bumgardner with pain in the left buttock, hip, leg and knee, complaining she was unable to bend over. (R. 179) She was assessed with a backache NOS (not otherwise specified) and prescribed Motrin 800 m.g. (R. 179) Dr. Bumgardner noted she should not work until February 11, 2002. (R. 179) An x-ray taken on February 19, 2002 to address plaintiff's low back and leg pain was normal, aside from minimal rotary mid lumbar levoconvex scoliosis. (R. 139) Plaintiff continued to complain of hip pain; Dr. Bumgardner assessed her backache as unchanged, and again stated plaintiff should not work. (R. 177)

An MRI of the L-S spine taken on February 25, 2002 showed a left paracentral disc herniation at L5/S1 with disc material extending behind the S1 vertebral body. (R. 175) Dr. Bumgardner referred plaintiff to Dr. Feldenzer. (R. 172) On March 14, 2002, Dr. Feldenzer assessed her with left S1 radiculopathy of at least four weeks duration, which was worsening and associated with some neurological deficit. (R. 149) Examination revealed her strength was 5/5 in all groups in the lower extremities, except for 4/5 left plenor flexors; deep tendon reflexes were 2-3+ at the knees and right ankle but were absent at the left ankle. (R. 148) Sensation was diminished in the left L5, S1 and S2 dermatomes but otherwise intact in the left leg and completely intact in the right leg. (R. 148-49) The straight leg test was negative on the right leg and positive on the left leg at twenty degrees for radiating pain. (R. 149) Plaintiff opted to try two weeks of physical therapy instead of surgery. (R. 149) After two weeks of therapy, plaintiff

9

reported improvement, specifically stating she "feels better when she is up and moving around." (R. 147) She still complained of left sciatica. (R. 147) Plaintiff again opted to continue physical therapy. (R. 147) Dr. Feldenzer opined she was unlikely to improve without surgery. (R. 147)

On April 24, 2002, Dr. Feldenzer reported no significant change in her neurological examination, and noted plaintiff still complained of left sciatica despite weeks of physical therapy. (R. 146) Plaintiff consented to surgery. (R. 146) Surgery was performed on April 30, 2002 with no complications. (R. 141) She was discharged the next day, reporting complete resolution of her left sciatica and no new deficits. (R. 143) On May 31, 2002 plaintiff stated in a post-operative visit to Dr. Feldenzer that she had no back pain or radiating sciatica, and denied numbness or weakness in the left leg. (R. 142) Examination revealed normal strength in all groups in the lower extremities, deep tendon reflexes of 2-3+ bilaterally at the knees and ankles. (R. 142) The left ankle reflex, which was absent preoperatively, had returned. (R. 142) Sensation was normal throughout, the straight leg test was negative bilaterally, and her gait was normal and appeared painless. (R. 142) Plaintiff was advised to walk at least one mile per day. (R. 142) After two weeks, she was anticipated to return to work without restriction. (R. 142)

On February 24, 2003, Meador reported to Dr. Bumgardner that she experienced back pain after cleaning water from her flooded basement. (R. 167) She complained of pain at the site of surgery and into the right hip joint and right leg. (R. 167) Her backache was assessed as "unchanged." (R. 167) She continued to complain of back pain on March 18, 2003, and again on April 29, 2003. (R. 163, 165) On June 7, 2003, plaintiff complained of pain in her leg after falling down stairs when her leg gave way. (R. 161) Her backache was assessed as "unchanged," but she did not want physical therapy. (R. 162)

10

Plaintiff saw Dr. Taylor on December 18, 2003 and complained of knots on the backs of her legs and back pain. (R. 222) Upon examination, both straight leg raises were negative. (R. 222) Plaintiff was diagnosed with sebaceous cysts, bilateral, posterior of the legs, and was given arthritis medication for her back. (R. 222)

Post-surgery, no clinical findings contradict the ALJ's determination that plaintiff had the RFC for a full range of medium work. Plaintiff reported no back pain or sciatica, and her examination was normal after surgery. (R. 142) Nearly eight months later, plaintiff began to report back pain after removing water from her basement; it was believed to be a lower back strain. (R. 167) Clinical findings remained unchanged and examination was normal. She was prescribed arthritis medication for her back pain. (R. 222) Meador was instructed to walk one mile per day. (R. 142) No evidence of record indicates her post-operative pain as a result of the February 2003 back strain was disabling or rendered her incapable of performing the full range of medium work. No evidence contradicts the findings of the state agency physicians, Drs. Hartman and Surrusco, that plaintiff was capable of occasionally lifting fifty pounds, frequently lifting twenty-five pounds, and sitting, standing or walking six hours in an eight hour workday. (R. 194) The state agency physicians noted the medical evidence does not support a finding that plaintiff had severe functional limitations during the relevant period. (R. 195) At the administrative hearing, the ALJ left the record open, giving plaintiff the opportunity to present evidence as to how far back plaintiff's disability began. (R. 257-58) Plaintiff failed to present any additional evidence to that effect.

Plaintiff claims the ALJ failed to evaluate the effect of plaintiff's pain on her ability to function, and failed to address the credibility of Meador's complaints. (Pl.'s Br. 15-16) Contrary

11

to plaintiff's assertions, the ALJ properly evaluated the effects of plaintiff's pain on her capacity for work. Specifically, the ALJ noted Social Security Ruling 96-7p provides that the ALJ must evaluate the effects of pain once an impairment reasonably expected to cause pain is shown by objective evidence. (R. 23) Considering "all evidence of record," the ALJ accorded great weight to the opinion of the state agency physicians as to plaintiff's RFC. (R. 24) Additionally, the ALJ made a specific finding that plaintiff's complaints were only credible as they applied to the period after April 22, 2004. (R. 25) Thus, he did not find her complaints of pain credible during the relevant period.

Furthermore, the ALJ did not fail to address the opinion of Dr. Bumgardner as plaintiff alleges. (Pl.'s Br. 16-17) The ALJ found records from Dr. Bumgardner subsequent to plaintiff's surgery "unremarkable for any significant clinical findings referable to lumbosacral dysfunction." (R. 24) Though plaintiff asserts the ALJ improperly disregarded Dr. Bumgardner's finding of disability on the December 18, 2003 Department of Motor Vehicles (DMV) disabled parking placard application in violation of the treating physician rule, this DMV form does not constitute a finding of disability under the Act. Dr. Bumgardner checked a box on the DMV form stating plaintiff is permanently disabled as it relates to disabled parking privileges, which means plaintiff has "a physical condition that limits or impairs movement from one place to another or the ability to walk as defined in Va. Code § 46.2-1240, and that has reached the maximum level of improvement and is not expected to change even with additional treatment." (R. 191) Dr. Bumgardner rendered no opinion as to plaintiff's disability or limitations under the Social Security Act.

12

Additionally, Dr. Bumgardner saw plaintiff six months prior to filling out that form, on June 7, 2003, at which time plaintiff chiefly complained of hypertension. (R. 161) Though she reported falling down the stairs after her leg gave way, he assessed her back pain as unchanged, and plaintiff reported not wanting physical therapy. (R. 162) On the same day the DMV form was filled out by Dr. Bumgardner, Dr. Taylor prescribed arthritis medication in response to plaintiff's complaints of back pain. (R. 222) Dr. Bumgardner did not see plaintiff again until March of 2003, at which time Meador complained only of cough and congestion. (R. 227) Dr. Bumgardner issued no clinical findings that plaintiff was disabled, or in reference to her functional limitations, and his DMV form opinion was not an opinion as to plaintiff's disability status under the Act deserving of great weight.

As such, the ALJ's finding as to plaintiff's RFC in the relevant period is supported by substantial evidence.

## V

Accordingly, the decision of the Commissioner is affirmed, and defendant's motion for summary judgment is granted.

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

13

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

**ENTER:** This 9th day of May, 2006.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge